Mrs. R. W. Canoy *v.* State Compensation Commissioner

(No. 7543)

Submitted April 11, 1933.   Decided May 30, 1933.

(Rehearing denied August 2, 1933)

*Christie & Christie* and *Ira J. Partlow,* for appellant.

*Homer A. Holt,* Attorney General and *R. Dennis Steed,* Assistant Attorney General, for State Compensation Commissioner.

*H. R. Hawthorne* and *Crockett & Tucker*, for Pocahontas Fuel Company, Inc.

KENNA, JUDGE:

R. W. Canoy was a slate and timber man in the mines of Pocahontas Fuel Company at Switchback, West Virginia. He was killed while walking on state route No. 8 by being run down by an automobile on the afternoon of October 16, 1931. On the application of his dependent widow, the commissioner denied compensation for the reason that the injury causing death did not occur in the course of and result from the employment of deceased by the company. The widow appealed.

The proof before the commissioner discloses that state route No. 8 bisects the property of Pocahontas Fuel Company for a distance of approximately one mile at its Switchback operation. There are dwelling houses for the use of the employees of the company located on both sides of this highway. The particular mine in which Canoy was employed was located some three hundred yards beyond the highway and on the opposite side of it from the dwelling that he occupied. His right to occupy this house arose under a written agreement with the company expressly stating that it is not to be construed as creating the relationship of landlord and tenant, and containing the following paragraph by way of recital: "That whereas, the party of the first part (the company) is engaged in the business of mining and shipping coal and, as a part of its plant and equipment necessary for the operation and conduct of its said business, owns and maintains houses for the occupancy of its employees as incidental to their employment while they are engaged in working for it, and no longer; * * *." Payment for his occupancy was collected over the payroll. Canoy was paid for the actual time employed in his work for the company. Although he had regular hours of employment, he was subject to be called at any time. On the morning of the accident, he had gone to work at the mine referred to at about seven-thirty o'clock in the morning. He had remained at work until four in the afternoon, when he boarded an outcoming "trip" of cars, with the other employees,

and on it rode as far as the drift mouth. At the drift mouth, with the others, he got off the "trip" and walked down a path customarily used by the employees of the company living across the highway from the mine, to the public highway. This path was the location of an old tramway and on it, next to the mine mouth, for a short way, had been constructed some wooden steps, evidently placed there by the company for the use of those traveling the path. Immediately opposite the point at which Canoy came to the highway, according to the testimony from the plat filed, the continuation of the path on the other side did not run from a point immediately opposite the end of the path on the side from which Canoy approached the road. The testimony shows that it was customary for those desiring to cross the road at this point, to walk laterally along the road some few feet before crossing. An automobile traveling at a high rate of speed struck and killed Canoy at about the point that this lateral walking on the highway was usually done by persons so crossing. The testimony is in slight conflict as to whether, when struck, he was actually on the paved portion of the road or was on what might be described as the dirt shoulder or berm. This conflict is not regarded as material. The testimony is to the effect that, for persons living in dwellings in the same neighborhood as Canoy, the only feasible and commonly used way of reaching the mine where he was employed, from their homes was by traveling on foot by a well-defined route to the point of crossing the highway where Canoy was attempting to cross, then crossing the highway in the manner that he was attempting to cross, then going from the highway, using the footpath and stairs, to the drift mouth, from where transportation of the company carried them to their actual places of work inside the mine.

There seems to be but one question presented in this record. There is no question raised as to the widow's right or as to the basis of dependency that she sets up. There is no question as to the regularity and sufficiency of her application nor any of the formal matters connected with the claim. There is no material conflict as to the facts. The question is whether, under this state of facts, the injury which resulted in the death of claimant's decedent was inflicted under such circum-

stances as would justify us in holding that it occurred in the course of and resulted from his employment.

Courts have differed widely in their decisions of questions involving compensability for accidents occurring not on the premises of the employer, while the employee was going to or from work. Careful running of the whole unbalanced gamut of decided cases, from the early English compensation cases to those of the various states of the union, results in the formulation of only one general rule, and that not helpful, to the effect that each case of this nature must be dealt with and decided upon the basis of its own facts and circumstances.

The cases are readily accessible by virtue of several exhaustive text treatments and annotations which are here set out for convenience and without direct citation to the cases that have been examined. They are as follows: Boyd on Workmen's Compensations, secs. 477, 486; Bradbury's Workmen's Compensation (3rd Ed.), p. 468; Dawbarn on Employer's Liability and Workmen's Compensation (4th Ed.), p. 12; Elliot's Workmen's Compensation Acts (9th Ed., Berryman), p. 40; 1 Honnold on Workmen's Compensation, sections 107, 109; Knocker's Digest of Workmen's Compensation Cases, p. 80; Knowles on Workmen's Compensation, p. 27; 1 Schneider on Workmen's Compensation Law (2d Ed.), Chapter VI; Note, 28 A. L. R. 1408; Note 49 A. L. R. 424; Note 51 A. L. R. 509; 28 R. C. L. pp. 804, 808. This court has heretofore passed upon a question in some measure similar to the one here presented. Seeking, therefore, the best guide for a decision under the rather exceptional facts of the case before us, we find it in *De Constantin* v. *Public Service Commission*, 75 W. Va. 32, 83 S. E. 88, L. R. A. 1916 A, 329. It appeared in that case that the claimant was working for a firm of contractors engaged in construction work on the Baltimore & Ohio Railroad. He was killed by a train on the main line of that railroad, but not on the construction work in which he was engaged. He was walking on the main line but there was no evidence showing just why he was there. The claim was rejected and this court affirmed the commission in rejecting it. Point 2 of the Syllabus lays down the law concerning injuries sustained by employees while not on the premises of the employer, as follows: "An injury incurred by a workman, in

the course of his travel to his place of work and not on the premises of the employer, does not give right to participate in such fund, unless the place of injury was brought within the scope of employment by an express or implied requirement of the contract of employment, of its use by the servant in going to and returning from his work.'' Accepting the foregoing as a statement of the law on the subject in this state, what of its applicability to the case before. us? The facts show a large mining operation of the employer through which runs the public highway upon which claimant's decedent was killed. The property of the employer upon which was located its plant and operations extended along both sides of the road. Dwelling houses on both sides of the road were provided by the employer for its workmen. Crossing the highway was, for practical purposes, unavoidable to those workmen living on one side whose places of employment were on the other. There was a definitely established route for them to travel. The route traveled was the only feasible way for them to reach their work and to return from it. Trips from the drift mouth into the mine were arranged so as to accommodate them and give them transportation in going and coming. A part of their contract of employment establishes the fact that their dwellings were ''a part of its (employer's) plant and equipment necessary for the operation and conduct of its said business'' and were occupied by them ''as incidental to their employment''. Taking this contract as establishing that the employer regarded the entire lay-out, including the dwelling occupied by decedent and his family, as being a part of its plant, used by claimant's decedent as incidental to his employment, and taking the physical surroundings indisputably proven as bearing out and establishing without question the facts recited in the contract of employment, we are of opinion that the use of the place of injury at the time thereof is shown to have been within the course of and resulting from the employment of claimant's decedent, by an express or implied requirement of the contract of employment of its use by the workman in going to and returning from his work.

We are therefore of opinion to reverse the finding of the compensation commissioner.

*Reversed.*

HATCHER, JUDGE, dissenting:

I would not seem opinionated but I cannot accept the contract of employment herein as determinative of this case. I cannot treat the contract itself as establishing what the facts themselves establish without any contract, i. e. that the entire layout including the dwelling occupied by the decedent constituted the plant of the employer. The use of a public way by the employee is generally contemplated where the way lies between his residence and the place of work. But the route the workman shall pursue is ordinarily of so little concern to the employer that it is never mentioned. The use of the public highway in the instant case was the obvious path of travel by the employee to and from work. But the use of the highway was not mentioned in the contract and I cannot follow the deduction that such use was an implied requirement of the contract. If so in this case, why not in all cases where the layout of the plant is similar but there is no written contract of employment and the oral employment simply gives the workman a job and rents him a house?

I can see no justification for making industry responsible for an accident to an employee when the place of the accident is not controlled or used by the employer in the performance of his work, and when neither the agency which caused the accident nor the employee is at the time controlled by the master or engaged in his business.

Citing the standard text-writers on workmen's compensation law, the Supreme Court of Michigan said in *Guastelo* v. *Rr. Co.*, 194 Mich. 382, 160 N. W. 484, 486: "It is recognized as a general rule that injuries sustained by an employer (off the employer's premises) while going to or returning from his days work, where there is no contract of transportation, are not to be regarded as arising out of or received in the course of his employment." This declaration is fully supported by the following treatises on Workmen's Compensation: Bradbury (3d Ed.) p. 468; Schneider (2d Ed.) sec. 266; Boyd, sec. 486; Honnold, sec. 108; 28 R. C. L. sec. 93, pp. 804-5.

Therefore I respectfully dissent.