REBECCA BUCKLAND *v.* STATE COMPENSATION COMMIS-
SIONER *et al.*

(No. 8014)

Submitted September 5, 1934.  Decided September
11, 1934.

*Hoagland French,* for appellant.
*Homer A. Holt,* Attorney General, and *Kenneth E.
Hines,* Assistant Attorney General, for respondent.
*Sale, St. Clair & Sale,* for Pond Creek Pocahontas Co.

KENNA, JUDGE:

W. H. Buckland was employed at the picking table on
the No. 3 tipple of Pond Creek Pocahontas Company at
Bartley, West Virginia.  He was killed on the night of
August 19, 1932, on State Route No. 83 by being struck
by the eastbound Dry Fork bus, while returning to his
home from his work.  His dependent widow applied for
compensation which was refused by the commissoner on
the ground that the injury that resulted in the death of
claimant's decedent was not received in the course of and

resulting from his employment. The finding was protested, a hearing held, the original decision of the commissioner affirmed by him, and this appeal prosecuted.

There is little conflict in the proof, both *ex parte* and at the hearing before the commissioner, and the circumstances of the employment and of the accident may be briefly stated. The tipple of No. 3 mine of the defendant company at Bartley, where decedent was employed, is located on the west side of the Dry Fork of Tug River. State Route No. 83 is on the east side of the stream and parallels it. The state road is reached from the tipple by crossing a bridge over the creek, coming first to and traveling along a dirt road that runs north almost parallel with the state route, until it connects with that highway a distance of some 200 yards from the bridge. From the point where the dirt road connects with the state route, that route follows the creek for several hundred yards almost due north, and then swings with the creek around a bend generally to the southeast for several hundred yards, and reaches a point from which it turns again almost due north, passing the house in the No. 500 camp of the company occupied by W. H. Buckland at the time of his death. This house is located something over a mile from the tipple at which Buckland worked, stands near State Route No. 83, and is on the opposite side (eastern side) from the side (western side) of the highway on which the tipple stands. The property of the coal company lies on both sides of State Route No. 83 for the entire distance from the tipple to Buckland's home. There is no way to reach Buckland's home from the tipple except by traveling in some manner on State Route No. 83, unless the tracks of the Norfolk & Western Railway Company are used. The coal company does not furnish transportation for its men from their places of residence to their work. Buckland was accustomed to walking between his place of residence and his work at the tipple, except on those occasions when he could pick up a ride en route. The lease under which Buckland occupied his house is dated January 13, 1930, and contains the following language:

."Second: That it is expressly agreed by the Parties that the tenancy created by this contract is incident to the employment of said lessee by the said lessor, and that the said lessee shall not have the right to sublet or lease any part of the demised premises."

This paper by its express terms creates a tenancy at will.

Claimant relies upon the case of *Canoy* v. *State Compensation Commissioner*, 113 W. Va. 914, 170 S. E. 184. In that case, Canoy was employed in a mine of the Pocahontas Fuel Company on the opposite side of State Route No. 8 from a dwelling house of the company occupied by him under a contract similar to the one in this case. In going to and from work, he traveled from the drift mouth a distance of some 300 yards over a path and down steps constructed by the company until he reached the highway which he was required to cross, traveling laterally along the highway some few feet in order to do so, and to reach the continuation of the path on the other side. Upon reaching the other side of the highway, he traveled along the continuation of the path to his home on the company's property. The crossing of the highway in the *Canoy* case was a mere incident to the traveling from his place of work to his dwelling house upon the premises of the employer. We held in that case that the place of injury was brought within the scope of the employment by a requirement of the contract of employment. It will be noted that Buckland was not required by his contract of employment to become a traveler upon the highway in going to and from his work. We believe that this is the circumstance that distinguishes the case at bar from the *Canoy* case. Here, Buckland in going to and from his work, was required to do but little traveling upon the 'actual premises of the employer. By far the greater amount of his travel, a distance of more than a mile, was required to be done along the public highway, and its use by him was the major factor in going from his home to his work and from his work to his home. Under the circumstances,

326

we do not believe that the place of injury was brought within the scope of his employment by an express or implied requirement of the contract of employment. It may well be said that it resulted from the contract of employment, but in addition to this, the requirement of the statute is that the injury causing death must occur in the course of the employment. The general rule is that injuries arising from the ordinary use of streets and highways do not result from the employment of the injured workman, and are not compensable when they occur from causes to which all other persons traveling the street are equally exposed, unless such use is required of the employee in the performance of his duties for the employer. *Dreyfus & Co.* v. *Meade*, 142 Va. 567, 129 S. E. 336; *Harless* v. *Forgy, Hanson & McCorkle*, (La. App) 149 So. 135; *Clark* v. *Vorhees*, 231 N. Y. 14, 131 N. E. 553; *Lancaster* v. *Celanese Corporation of America*, 163 Md. 516, 163 A. 209. We do not believe, therefore, that the *Canoy* case furnishes a precedent for the decision of this case, and since claimant's decedent met his death while using the public highway as a means of travel in the same manner and for like purposes, as the general public was accustomed to use it, we think that the injury causing death did not occur in the course of his employment, and are therefore of opinion to affirm the finding of the compensation commissioner.

*Affirmed.*