J. B. WILLIAMS *v.* COMPENSATION COMMISSIONER *et al.*

(No. 9261)

Submitted February 25, 1942. Decided April 7, 1942.

*Price, Smith & Spilman,* for appellant.
*Patrick J. Flanagan,* for appellee.

ROSE, JUDGE:

The Kingston-Pocahontas Coal Company brings here for review an order of the Workmen's Compensation Appeal Board, made August 12, 1941, by which a ruling of the Workmen's Compensation Commissioner, entered May 9, 1941, disallowing compensation to J. B. Williams, an employee of the appellant, was reversed with directions that compensation be awarded the claimant in the statutory amount.

Only a single question is presented here for solution, namely, whether the claimant, at the time of his injury, was within the zone of his employment. Williams was a workman in the mine of the Kingston-Pocahontas Coal Company, located on Tug River and the Norfolk & Western Railway about two miles west of the corporate limits of the City of Welch in McDowell County. He lived in a house, not owned by his employer, in the eastern part of that city, at a distance of two or three miles from his place of work. From the mining plant two public high-

ways extended eastward to the City of Welch, one on either side of Tug River. A two-track line of the Norfolk & Western Railway also runs eastward through the Coal Company's land, past its shaft and operating buildings, through a tunnel called "Hemphill Tunnel No. 2", and thence, leaving the company's boundary, crosses Tug River by a trestle and passes through another tunnel 860 feet in length, known as "Hemphill Tunnel No. 1", located wholly on lands not owned by this company. The shaft, lamp-house and other operating buildings of the Kingston-Pocahontas Coal Company are located near the west end of Hemphill Tunnel No. 2. On the 23rd day of February, 1940, Williams quit work about eleven P. M. and started home from the lamphouse, walking by way of one of the aforesaid highways to its intersection with the railroad track at the edge of the company's property, where he left the highway, crossed the railroad bridge over Tug River, and continued through "Hemphill Tunnel No. 1", almost to its eastern end. There he was struck by a passing train and rendered unconscious. His hurts were subsequently described as "severe injuries to neck and head". He applied for and was paid insurance for several weeks under a policy covering only injuries not compensable under the Workmen's Compensation law.

The evidence shows that the claimant had worked for his present employer for about nine years, during all of which time he had used this tunnel in going to and from his work, and that practically all of his fellow-workmen did likewise without objection or warning from either the coal company or the railway company. Signs forbidding trespassing were always maintained by the railway company at the tunnel entrances and ends of the trestle across Tug River. It further appears that the highways leading from the claimant's place of employment to the City of Welch followed the curves of the river and were, therefore, much longer than the railroad track, which was straight and level.

The action of the Appeal Board was based, as shown by its order, on the case of *McEwan* v. *Compensation*

*Commissioner,* 123 W. Va. 310, 14 S. E. 2d 914, decided by this Court May 20, 1941. In that case, we held that:

> "Injury or death of an employee of a subscriber under the workmen's compensation statute, Code 1931, 23-1-1 et seq., occurring upon the right-of-way of a railroad company, used by said employee in common with his fellow workmen, with the acquiescence of the railroad company, is compensable when 'the place of injury was brought within the scope of the employment by an express or implied requirement of the contract of employment, of its use by the servant in going to and returning from his work.'"

The very limitation expressed in the latter part of this syllabus would seem to make it wholly inapplicable to the present case. The principle there announced traces back through *Canoy* v. *Compensation Commissioner,* 113 W. Va. 914, 170 S. E. 184, to *De Constantin* v. *Public Service Commission,* 75 W. Va. 32, 83 S. E. 88, L. R. A. 1916A, 329, where it is stated negatively thus:

> "An injury incurred by a workman, in the course of his travel to his place of work and not on the premises of the employer, does not give right to participation in such fund, unless the place of injury was brought within the scope of employment by an express or implied requirement in the contract of employment, of its use by the servant in going to and returning from his work."

Compensation in that case was, accordingly, refused, but in the *Canoy* case, circumstances existed which brought the claimant within the limitations referred to in the *De Constantin* case, and compensation was allowed. In *Canoy* v. *Commissioner, supra,* the employee was killed on a highway passing through the employer's operating plant, over which it was necessary and customary for employees to cross between their homes and places of work. The written contract of employment required him to live in a company house, which was expressly agreed therein to be

a part of the employer's "plant and equipment", and the occupation of which by the employee was made "incidental to" his employment. In the *McEwan* case, the claimant also resided in a company house, under a contract substantially like that involved in the *Canoy* case, and was injured not more than 130 feet from his place of work while crossing a railroad track which was necessary for him to cross. In the present case, on the contrary, the claimant did not live in a company house and, of course, did not have any such contract; he was injured three-fourths of a mile from his place of work and after having proceeded for approximately one-third of a mile beyond his employer's premises; and there were two convenient and practicable public highways by which he could have reached his home, involving only an additional mile or so of distance.

It is a far call from the facts in the *Canoy* and *McEwan* cases to the situation here presented. The claimant at bar appears clearly to come within the very common class of employees who are injured off the employer's premises and while going to or coming from work by a route chosen by themselves. In such cases, in the absence of some special and controlling circumstance, compensation is uniformly disallowed. *Carper* v. *Compensation Commissioner*, 121 W. Va. 1, 1 S. E. 2d 165; *Taylor* v. *Compensation Commissioner*, 116 W. Va. 13, 178 S. E. 71; *Buckland* v. *Compensation Commissioner*, 115 W. Va. 323, 175 S. E. 785; *Wilkin* v. *Koppers Co.*, 84 W. Va. 460, 100 S. E. 300. The fifth point in the syllabus of the *Wilkin* case is particularly applicable and significant here:

> "An employee, who for his own personal convenience wilfully disregards such public crossings, and elects to take a shorter route over the railroad tracks, more direct but fraught with more danger than the public crossing, does so at his peril, and, if killed while thereon, no liability therefor attaches to the employer, though other employees daily follow the same way with the knowledge and consent of the employer."

The Appeal Board plainly misapprehended the scope and applicability of our holding in the case of *McEwan* v. *Compensation Commissioner, supra*, and hence was led into error. Its order, appealed from, therefore, must be reversed.

In view of the conclusion thus reached, the questions raised and argued in regard to the effect in this proceeding of the claimant's having made claim for, and accepted, benefits under a policy of insurance, the benefits of which were expressly limited to injuries not compensable under the Workmen's Compensation law, become academic, and need not be considered.

*Reversed.*