Wallace WEBB,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corporation.**

**Civ. A. No. 821.**

United States District Court
S. D. West Virginia
Huntington Division.
May 20, 1957.

Harry W. Hill and Randolph Bias, Williamson, W. Va. (W. Graham Smith, Jr., Williamson, W. Va., on the brief), for plaintiff.

Stanley C. Morris, Carl F. Stucky, Jr., and Charles W. Yeager, Charleston, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

The sole issue in this case is whether the plaintiff was within the "course of his employment" at the moment he was injured when a truck in which he was riding home from work, owned by his employer and driven by a fellow employee, went off the road. Defendant had issued a public liability automobile insurance policy to plaintiff's employer, the Board of Education of Mingo County, West Virginia, covering the vehicle, which contained an exception from coverage for injuries sustained by employees while in the course of their employment.

Prior to trial a pre-trial conference was held at which it was agreed that the only issue of fact was whether the plaintiff was acting within the course of his employment at the time of the accident, and that if such question is answered in the affirmative, judgment would be entered for the defendant, and if such question is answered in the negative, judgment would be entered for the plaintiff for the amount sued for. At such pre-trial conference certain facts were stipulated and agreed, as set forth in a pre-trial order. Prior to trial, defendant made a motion for summary judgment upon the record, including the facts admitted in the pleadings, the facts admitted at the pre-trial conference, and upon admissions made by plaintiff in response to defendant's request for admissions. Such motion was denied and there was a trial before a jury. At the conclusion of plaintiff's evidence and again after completion of all the evidence, defendant moved that the Court direct the jury to answer the issue of fact in the affirmative, and also moved that the Court enter judgment for the defendant. Both motions were denied. The case was submitted to a jury and the jury was ordered to return a special verdict in the form of a special written finding upon the issue of fact mentioned above. Such question was answered by the jury in the negative, whereupon the defendant moved that the verdict and special finding of the jury be set aside and that judgment be entered in accordance with defendant's motion that the Court instruct the jury to answer the issue of fact in the affirmative, and its motion to enter judgment for the defendant, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

This latter motion is now granted, the special finding and verdict of the jury is set aside, and judgment is now entered for the defendant.

There is no dispute as to the material facts. When the evidence is considered in the light most favorable to the plaintiff, it is clear that plaintiff has failed

to make out a case, and that as a matter of law the Court must find that plaintiff was acting in the course of his employment at the time of his injury, and is, therefore, unable to recover damages for such injury under the terms of this insurance policy.

Plaintiff was employed as a carpenter by the Board of Education, and was engaged in remodeling the East Fork school house. Plaintiff lived about 7 miles from Lenore, West Virginia. He had no car and was obliged to walk or get other means of transportation to Lenore, where he joined one William Damron, a fellow employee, and rode with him in a Board of Education truck to the school house. Damron kept the truck at his home about 4 or 5 miles from Lenore, and drove by Lenore each day on his way to the school building under repair. Damron carried in his truck all the tools and supplies used on the job. Upon completing his carpenter work each day at the school house, plaintiff rode back with Damron in the same truck as far as Lenore and then walked or caught a ride to his home. He followed this procedure 20 of the 22 days he worked on the job. On June 30, 1953, after plaintiff had finished his carpenter work for the day, he got into the cab of the supply truck with Damron, the person authorized by the Board of Education to drive the supply and tool truck for this particular job, and the two (together with others) started toward Lenore, carrying with them in the truck the tools used on the job. About 6 miles before reaching Lenore, and after traveling a distance of about 19 miles from the school, the truck ran off the road and plaintiff was injured.

There is no public transportation over the road between Lenore and the school or between plaintiff's home and the school. The road between the school house and Lenore is a rather poor road, in part rock-based, in part a dirt road, and in part merely an abandoned railroad bed. Mingo County is a rural county of peculiar shape, being only 6 miles wide and over 60 miles long. The County had passed a bond issue and was engaged in building, repairing or remodeling 20 or more school houses at a cost of more than $2,000,000. Without an adequate labor supply the work could not be done. This was not an easy task, as carpenters, painters and other workmen had to travel long distances to get to their work. Many of them had no automobile, and there was little public transportation.

Troy Floyd, Jr., the superintendent of schools, testified that the Board of Education employed the men to work 8 hours per day, 5 days a week, on a monthly salary basis; that the Board did not agree to furnish them transportation, but gave its permission for the truck drivers who carried tools and supplies to take the men to work and to take them home in the evening, so long as it did not require the truck driver to go out of his regular course. Damron, the truck driver who carried plaintiff to and from work, a witness for plaintiff, testified that he was instructed by Floyd to be at Lenore each morning at 6 o'clock to pick up any employees on the East Fork job, but not to wait for them. Plaintiff came from his home to Lenore, a distance of about 7 miles, with one Thompson, a fellow employee, in the latter's car, and there Thompson parked his car and rode the truck with plaintiff and Damron to the school house. Six or eight other workmen also got on the same truck at Lenore, four or five of whom lived up Chatteroy Hollow, and two or three other workmen boarded the same truck each morning at Dingess. On the return home in the evening, the same procedure was followed, the men getting off the truck at the point nearest their homes. Most of the 12 to 15 persons working on the job with plaintiff were hauled in this truck regularly by Damron with the permission and authorization of the school board. On one or two occasions, Thompson and plaintiff missed the truck, and drove on to the job in Thompson's car.

In plaintiff's case, when he was first told of his employment, he was unable

to accept such employment because he had no automobile, but when he learned that Thompson, a neighbor, would take him to Lenore where he could get on the supply truck, which would be hauling supplies and tools and other workmen to the school house, he accepted the employment. At the time of the accident, Damron was driving the truck and hauling tools in the course of his employment, and plaintiff does not contend that the transportation of plaintiff in any manner interfered with the work Damron was employed to do or caused him to change his course. Under these facts, it can be said that plaintiff was on the truck with the knowledge, permission and acquiescence of the Board of Education; that the transportation of plaintiff was a necessary incident of his employment, and in furtherance of such employment, and was a part of the work arrangement and understanding of employment.

Plaintiff recovered a judgment against William Damron in the Circuit Court of Mingo County, West Virginia, for $3,750, plus costs and interest until paid. That judgment being unsatisfied, plaintiff then brought this action against the insurance company, alleging liability under the policy issued the Board of Education covering the vehicle in which plaintiff was injured.

■ A specimen copy of an insurance policy was stipulated by the parties to contain the same printed provisions as those contained in the policy issued by defendant to the Board of Education, and was admitted into evidence in lieu of the original policy which had been lost. The policy contains an exception that it shall not apply:

"(b) to any employee with respect to injury to * * * another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

The law in this type case was set forth by Judge Ben Moore in the case of Farm Bureau Mut. Auto. Ins. Co. v. Smoot, D.C.S.D.W.Va.1950, 95 F.Supp. 600, 603–604:

"The weight of authority is to the effect that an employee making use of transportation customarily and gratuitously furnished by the employer, in the absence of an express provision for same, is not acting in the course of his employment unless a duty to transport can be implied from the attendant circumstances in the contract of hiring. Konopka v. Jackson County Road Commission, 270 Mich. 174, 258 N. W. 429, 97 A.L.R. 552; In re Donovan, 217 Mass. 76, 104 N.E. 431. This duty may be implied where it is shown that the transportation was provided as an incident to procuring the services of an employee whose home is a great distance from the place of work. Johnson v. Aetna Casualty & Surety Co., 5 Cir., 104 F.2d 22; Southern States Mfg. Co. v. Wright, 146 Fla. 29, 200 So. 375. It may also be implied where the transportation provided by the employer is shown to have been a necessary incident to the employment because it was the only practical means by which the employee could travel to and from the place of work. Venho v. Ostrander Railway & Timber Co., 185 Wash. 138, 52 P.2d 1267; Lamm v. Silver Falls Timber Co., 133 Or. 468, 277 P. 91, 286 P. 527, rehearing denied, 133 Or. 524, 291 P. 375, appeal denied, 282 U.S. 812, 51 S.Ct. 214, 75 L.Ed. 727. At any rate, it must be shown that the transportation so furnished was a necessary incident of the employment rather than a mere favor not in furtherance of the employer's business. American Mutual Liability Ins. Co. v. Curry, 187 Ga. 342, 200 S.E. 150; Morucci v. Susquehanna Collieries Co., 297 Pa. 508, 147 A. 533."

At the time plaintiff was hired, the Board did not guarantee him transportation. However, he admits that he

was further told that School Board employees were permitted to ride School Board trucks to and from work so long as it did not take the truck driver out of his course. Here we have a man who had no car, who lived some 32 miles from his place of work, who almost always utilized the transportation which his employer made available. With no public transportation available over this poor road, this was plaintiff's only practical means of getting to work. Reasonable men could not differ that transportation provided under those circumstances comes within the purview of the cases cited by Judge Moore, and was an incident of plaintiff's employment. The relief sought in this action must be denied, therefore, because of the exclusion in the insurance policy quoted above.

A case which is very similar to the case at bar, both in facts and exclusionary provisions of the policy, is Inland Mutual Ins. Co. v. Ellzey, D.C.N.D.Fla., 119 F.Supp. 748, 749. Referring to transportation as an incident of employment, the court states:

> "It is well settled by the decisions that where an employer furnishes transportation for his employees to and from work that such transportation is an implied term of the employment and that the Exclusion provisions of insurance is [sic] applicable to such employees while being transported to or from work by the employer. Webb v. American Fire & Casualty Co., 148 Fla. 714, 5 So.2d 252; Johnson v. Aetna Casualty & Surety Co., 5 Cir., 104 F.2d 22; Lumber Mutual Casualty Ins. Co. of New York v. Stukes, 4 Cir., 164 F.2d 571; State Farm Mut. Automobile Ins. Co. v. Braxton, 4 Cir., 167 F.2d 283 and Getlin v. Maryland Cas. Co., 9 Cir., 196 F.2d 249."

In State Farm Mut. Automobile Ins. Co. v. Braxton, 4 Cir., 167 F.2d 283, an employee was being taken part way home after work by his employer in the employer's truck and was struck by a burning sack with which the employer had attempted to extinguish a fire in the truck. The court held that the insurer's motion for summary judgment should have been granted, under an exclusion clause relieving the insurer from liability for injuries to employees while engaged in the employment of the insured, reversing the District Court. In that case, public transportation was available to the employee, unlike the case at bar, for the employee had asked his employer for an advance of seven cents carfare but the employer chose to transport the employee instead. It would seem that the facts in that case point more strongly toward the employer-employee relationship having ended than the instant case, for the employer had the choice of advancing seven cents or transporting the employee, whereas in Webb's case the employer's choice was to leave Webb 32 miles from home or transport him, yet the court concluded that the injury came within the exclusion clause of the policy. Judge Dobie stated:

> "It is well settled that the primary purpose of an exclusion clause in a public liability policy, such as is now before us, is to draw a sharp line between employees, who are excluded, and members of the general public. As Judge Parker, speaking for our Court in Lumber Mutual Casualty Ins. Co. of New York v. Stukes, 4 Cir., 164 F.2d 571, 573, said: 'The purpose of the exclusion clause is to limit coverage to liability for injury to members of the general public and to exclude liability to employees of the insured.'" 167 F.2d at page 284.

Plaintiff in this action relies upon the case of Ayres v. Harleysville Mutual Casualty Co., 172 Va. 383, 2 S.E.2d 303, but that case is distinguishable upon its facts along the line Judge Dobie used in the State Farm Mut. case, 167 F.2d at page 285:

> "Appellees rely upon Ayres v. Harleysville Mutual Casualty Co., 172 Va. 383, 2 S.E.2d 303, 305; but that case is not in point. The ex-

clusion clause there applied 'to any employee or employees of the insured while engaged in operating or caring for any of the automobiles covered by this policy'; and the only question was whether an employee who rode along with the truck driver for the purpose of rendering assistance to him if necessary fell within the clause. In holding to the contrary, the Virginia court construed the clause strictly against the company and interpreted it as applying only when the employee was himself actually engaged in operating or caring for the truck. Manifestly that decision can have no application here."

Plaintiff cites B. & H. Passmore Metal & Roofing Company, Inc., v. New Amsterdam Casualty Company, 10 Cir., 147 F.2d 536, as a case where a man was held not to be an employee when killed while riding home in his employer's truck. That case was relied upon by the District Court in Lumber Mut. Casualty Ins. Co. of New York v. Stukes, D.C.E.D.S.C., 72 F.Supp. 463, but the Court of Appeals for the Fourth Circuit reversed the lower court, 164 F.2d 571, stating:

"See also Johnson v. Aetna Casualty & Surety Co., 5 Cir., 104 F.2d 22; and State Farm Mutual Automobile Ins. Co. v. Brooks, 8 Cir., 136 F.2d 807, where persons being carried home from work in a motor vehicle of the employer were held employees and engaged in the business for which employed within the meaning of just such an exclusion clause as is here involved. To the contrary is B. & H. Passmore Metal & Roofing Co. v. New Amsterdam Casualty Co., 10 Cir., 147 F.2d 536. * * *" 164 F.2d at page 574.

It therefore appears that our Fourth Circuit looks more favorably upon the decisions of the Fifth and Eighth Circuits than that B. & H. Passmore decision of the Tenth Circuit. The case is further distinguishable from the facts before this Court in that the exclusion clause covered only employees "engaged in the business" of their employer, and under Oklahoma law the court interpreted "engaged" to require some performance or taking part, hence merely riding home in the back of a truck after working hours was not being "engaged" in the master's business. The exclusionary clause in the instant case, ("injured in the course of such employment,") is broader than just being "engaged", and the Tenth Circuit Court recognized a difference in the terminology: "Moreover, the exclusion clause 'engaged in the business, * * * of the insured' differs materially from the clause 'arising out of and in the course of his employment.'" 147 F.2d at page 538. The case of Elliott v. Behner, 150 Kan. 876, 96 P.2d 852, 853, is likewise not in point here because the policy there excluded employees "engaged in the business or occupation of the assured", and it is easy to see how one riding home after work might not be "engaged", as the Kansas court held, yet still have had the transportation provided as an incident of his employment and thereby be "'in the course of' [such] employment."

In Vaughn v. Standard Sur. & Cas. Co., 27 Tenn.App. 671, 184 S.W.2d 556, 559, the court states:

"While no express contract for transportation was made * * * (i)t is not reasonable to suppose that the contracting parties would contemplate that these men would be carried in trucks a distance of fifty or sixty miles from McMinnville and not returned after the day's work was done. It is true that complainant did not have to avail himself of this means of transportation, but as an actual fact he did avail himself of it.

"We, therefore, hold that transportation was incidental to the employment contract and a part thereof: * * *"

That statement is singularly apposite here if we but change the locale and change the distance to thirty-two miles.

No West Virginia case has been cited, nor has the Court found any, dealing with these exclusions in insurance policies. In a case which arose under the West Virginia Workmen's Compensation law, an injury was held compensable where an employee was killed while crawling under coupled railroad cars while on the way to work. McEwan v. State Compensation Commissioner, 123 W.Va. 310, 14 S.E.2d 914, 916. The court states:

"* * * this Court has committed itself to the doctrine that the right to compensation is not barred by reason of the fact that the employee's injury or death occurred outside the premises of the employer where 'the place of injury was brought within the scope of employment by an express or implied requirement of the contract of employment, of its use by the servant in going to and returning from [his] work.'"

Plaintiff objects to comparing this case with Workmen's Compensation cases. However, as was stated by Judge Parker in Lumber Mutual Casualty Ins. Co. of New York v. Stukes, supra, 164 F.2d at page 574:

"We are not impressed by the argument that, because of what is said to be the attitude of South Carolina courts towards insurance policies, a person in South Carolina is to be held to be an employee 'engaged in the discharge of the duties of his employment' for purposes of the Workmen's Compensation Act, Code 1942, § 7035-1 et seq., but not such an employee where an insurance policy is involved. There is no decision of the South Carolina courts to that effect; and in matters of this sort there is every reason why confusion in the law should be avoided. It should not be overlooked, furthermore, that these public liability policies are drawn with the express purpose of excluding injuries covered by workmen's compensation laws."

The latest case found involving these insurance exclusion clauses is Campbell v. American Farmers Mutual Insurance Co., 8 Cir., 238 F.2d 284. There it was held that where the teacher had no other means of getting from her home to school and back except by being transported by school bus, she was "engaged in the business of the insured" when being transported home in a school bus after school hours. The plaintiff in the case at bar stands in exactly the same position as school teachers who ride the school bus in Mingo County, West Virginia. The Eighth Circuit held in the Campbell case that such people are "engaged" in their employer's business; but this Court does not need to go that far in holding that plaintiff was acting "in the course of his employment" when, with the knowledge and acquiescence of his employer, he was riding home in the truck provided by the employer.

For the reasons stated, defendant's motion for judgment is granted.