168 S.E.2d 723 (1969)
Anna BILCHAK, Widow of Michael Bilchak
v.
STATE WORKMEN'S COMPENSATION COMMISSIONER and Hancock Manufacturing Company.
Sally Ann DURST, Widow of Roe C. Durst
v.
STATE WORKMEN'S COMPENSATION COMMISSIONER and Hancock Manufacturing Company.
Nos. 12811, 12812.
Supreme Court of Appeals of West Virginia.
Submitted April 29, 1969.
Decided July 1, 1969.
*724 Charles D. Bell, Wellsburg, for appellants.
Pinsky, Mahan, Barnes & Watson, Raymond A. Hinerman, Wellsburg, for appellees.
BERRY, Judge.
These appeals from the Workmen's Compensation Appeal Board which were consolidated for the purposes of argument and decision in this Court involve identical matters. The claimants, Anna Bilchak, widow of Michael Bilchak, and Sally Ann Durst, widow of Roe C. Durst, were denied compensation by the Workmen's Compensation Commissioner for the deaths of their husbands who were drowned in the Ohio River while attempting to row a boat across the river from the Ohio side where they lived to the West Virginia side where they were employed. An appeal was taken by the claimants to the Workmen's Compensation Appeal Board which reversed the Commissioner and allowed compensation. The employer of the deceased men, Hancock Manufacturing Company, applied for an appeal from the order of the Appeal Board, which application was granted on *725 March 10, 1969, and the consolidated cases were submitted for decision upon arguments and briefs at the April Special 1969 Docket of this Court.
The deceased employees of the Hancock Manufacturing Company lived in Toronto, Ohio, which is located across the Ohio River, a mile or so downstream from the appellant's plant located in New Cumberland, West Virginia. The deceased men had been employed by the appellant for about 30 years and it was their custom to row across the river in a boat which was owned by Durst although both he and Bilchak had a key to the lock securing the chain by which the boat was moored. The boat was docked near the plant and at the end of their shift they would go back across the river to their homes. The reason for the use of the boat in going to and from their work was that it only took them about ten minutes to row the few hundred yards across the river, whereas, if they used the public highway they would have to drive down the highway on the Ohio side, cross a bridge to the West Virginia side, and drive up the highway to the plant, a trip of some 15 to 18 miles by highway from their homes in Ohio requiring usually over an hour to drive in an automobile. When the boat used by the deceased men was on the Ohio side of the river it was docked or chained to a fixed object on the property of the Ohio Edison Company. When the boat was on the West Virginia side of the river it was similarly secured on the property of the appellant, and they only had a few hundred feet to walk to the plant where they worked. The boat could not be used by other persons without first obtaining permission from the deceased men as they were the only ones who had keys to the lock by which the boat was secured on each side of the river.
On the morning of September 3, 1965 it was foggy and the deceased men left their homes at the usual time around 6 o'clock to meet at the boat. They drove their cars to the usual place and parked them on the Ohio side of the river. The men did not show up for work that morning at the West Virginia plant and a call was made by one of the plant officials to Mrs. Bilchak from whom he ascertained that the men had left for work. About the middle of the morning a search was begun for the men, and after considerable searching the two bodies and the boat were found at various points extending down the river several miles from where the men started to cross.
There is no evidence as to what occurred on the morning of September 3, 1965 except that the boat was damaged as if it had been in a collision. The oar locks were torn loose and one of the seats had been jerked out and apparently most of the damage was to the right side of the boat. It is not known with what the boat collided and in what direction it was going at the time of the collision. In the winter when ice was on the river, the boat was not used and they would drive to work in their automobiles. The evidence is not clear as to the number of people who used the boat in question in traveling to and from work at the employer's plant. It appears that as many as 10 or 12 men had over some years used this means of transportation although apparently it was not used by all of the men regularly.
Between the years 1943 and 1945 during World War II when gasoline rationing was in effect, the company maintained a private boat service and transported numerous employees back and forth across the river, but this service was discontinued after the War. However, the employer kept a boat for its own use and some time in 1960 or 1961 it purchased a fiberglass boat which was light, with high sides, making it difficult to row and the employees did not like to use it. On occasions when Durst or other employees were requested to cross the river on company business Durst would use his own boat. The employer also owned a plant on the Ohio side where the two deceased men were at times employed when the plant on the West Virginia *726 side was not working. It appears that neither one had been employed at the plant on the Ohio side for some time before the accident occurred.
The employer from time to time found it necessary to transport materials and persons across the river to the other plant. Materials and personnel were also transported on the highway and across the river to the other plant. However, it appears that it would not take as long by crossing the river. Samples of steel products and company supervisors were at times taken across the river in the boat owned by Durst either with Durst operating it or some other person connected with the company using it. No consistent pattern was used in connection with the company business and the Durst boat but it is clear that Durst and other employees preferred using the Durst boat instead of the company boat when company business was involved. The company on one occasion, upon request, gave Durst some paint to paint his boat and also furnished him a pair of oars which were apparently surplus items. A company official testified that these gifts were made on the basis of personal friendship and not for any company business. Durst possibly had at times used the company boat for his own purposes and his own boat was used by him for recreational purposes such as fishing. There is no evidence whatsoever that the Durst boat was being used for any company purpose on the day of the fatal accident.
The company's policy with regard to the use of the boat for coming and going to work across the Ohio River by employees was not governed by any written or oral rules. However, it is clear the employer had not affirmatively approved of such transportation by way of furnishing boats since the end of World War II, and on occasions it appears that such means of transportation had been discouraged because of the danger involved during bad weather when fog or ice was present on the river. Both Durst and Bilchak had on a few occasions attempted to use the boat and had turned back either when the fog was discovered or ice was in the river and had consequently made the trip to the plant by automobile.
A company official testified that the employer owned the land under the Ohio River to the low water mark on the Ohio side. The claimants contend that this evidence, which was not contradicted, indicates that Durst and Bilchak were on the company's premises while attempting to cross the river. However, there is no question that the Ohio River is a navigable stream and can be used by the public for the purpose of transportation. There is also no question but that the boat was tied up on the Ohio side on property owned by the Ohio Edison Company and not the employer.
The appellees filed a written motion to dismiss this appeal as improvidently awarded because the appellant is a foreign corporation qualified to do business in the State of West Virginia and was granted the appeal without first posting a bond as required by law. There is no merit to this contention. The appellant Hancock Manufacturing Company is an Ohio corporation qualified to do business in the State of West Virginia, and having done so, has all the rights, powers and privileges of, and is subject to the same regulations, restrictions and liabilities as corporations chartered under the laws of this State. Code, 31-1-79, as amended; Marmet Co. v. Archibald, 37 W.Va. 778, 17 S.E. 299. Code, 23-5-4, as amended, relied on by the appellees to support their motion is not applicable. Even when a bond is required for nonresidents under Code, 23-5-4, as amended, it relates to perfecting the appeal and its absence would merely suspend all proceedings until such nonresident gives a bond in such case. Code, 59-2-2, as amended, provides for a dismissal of an action by a nonresident if he fails to file security within 60 days, or extension thereof, after notice, but if this statute be applicable, a bond was filed within such time limit in the present case.
*727 The only issue involved in this case is whether the death of claimants' husbands occurred in the course of and as a result of their employment while attempting to cross the Ohio River in a boat from their homes in Ohio to get to their place of employment in West Virginia.
There is no evidence in this case that the deceased men were on any business for the company at the time of their deaths. They were merely attempting to go to work as was their custom for many years. There was another mode of transportation they could have used in traveling to and from their work, but it would have required more time. The only way compensation would be warranted in the instant case would be to classify the coming and going to and from work by the deceased men by means of the use of a boat to cross the Ohio River, the place where the fatal injury occurred, as being "within the zone of their employment". There is no question but that the fatal accident did not occur on the premises of the employer when they were drowned while attempting to cross the river, notwithstanding the contention of the claimants' attorney that employer's witness made a statement that the employer owned the land under the Ohio River subject to flowage rights of the river. The reason is that the Ohio River is a navigable stream open to the public for transportation, and, therefore, there is no merit to the contention by the claimants' attorney multiplicatively asserted with regard to the employer's ownership of the land under the river, which in any event is highly questionable. See Carpenter v. Ohio River Sand & Gravel Corp., 134 W.Va. 587, 60 S.E.2d 212 and Campbell Brown & Co. v. Elkins, 141 W.Va. 801, 93 S.E.2d 248.
Ordinarily, an injury or death which is occasioned to an employee while going to or coming from work and which occurs while he is not on the premises of the employer is not compensable unless such place of injury or death is brought within the scope of his employment in some manner and the injury or death occurs in the course of and as a result of his employment. This rule of compensation law is stated by this Court in an early compensation case of DeConstantin v. Public Service Commission, 75 W.Va. 32, 83 S.E. 88, in point 2 of the syllabus of that case, in the following language: "An injury incurred by a workman in the course of his travel to his place of work, and not on the premises of the employer, does not give right to participation in such fund, unless the place of injury was brought within the scope of employment by an express or implied requirement in the contract of employment of its use by the servant in going to and returning from his work."
It has also been held that even if an employee is injured on the employer's premises and not in reasonable proximity to the place of employment, and he, therefore, is not within the zone of employment or within the contract of employment, express or implied, such injury is not compensable. This rule is stated in point 2 of the syllabus in the case of Taylor v. State Compensation Commissioner, 116 W.Va. 13, 178 S.E. 71, wherein it is stated: "It is a general rule that, if an employee, en route to or from his work, is injured on the property of the employer, not within the zone of employment, compensation may not be awarded." However, when an employee is injured on or off the employer's premises while traveling to or from his work and the place of injury is brought within the scope of employment by an express or implied requirement of the employment, such injury is held compensable. Hager v. State Comp. Comm'r., 112 W.Va. 492, 165 S.E. 668; Canoy v. State Comp. Commissioner, 113 W.Va. 914, 170 S.E. 184. If the injury occurs on the premises of the employer while the employee is going to or coming from work on a permissible route generally used by the employees the point where the injury occurs must be within a reasonable proximity to the place of work before such injury is compensable. Hager *728 v. Comp. Comm'r., supra. If the injury occurs on a public highway or place not on the premises of the employer such injury is not compensable unless the place of injury is brought within the scope of employment by an express or implied requirement of the contract of employment such as a written agreement between the employer and employee with regard to the occupancy of houses in which the employee resided within close proximity to the place of employment. Canoy v. State Comp. Commissioner, supra; Carper v. Workmen's Compensation Commissioner, 121 W.Va. 1, 1 S.E.2d 165.
There is no evidence in the case presented here of any express or implied requirement of the contract of employment that would bring the accident within the zone of employment such as the deceased men living in company owned houses or that they were required to go to their place of employment over any certain route. Even if the employees' houses were owned by the employer but the route from the homes was separate and apart from the employer's plant and facilities, any injury or death occurring while on such route, in the absence of special circumstances or contractual requirements, is not compensable. Carper v. Workmen's Compensation Commissioner, supra; Miller v. State Compensation Commissioner et al., 126 W.Va. 78, 27 S.E.2d 586. Certainly, if the deceased men had been killed while using the public highway or while crossing the bridge over the Ohio River on their way to work, it would not be contended that their deaths or injuries were compensable. Their deaths which occurred while crossing the Ohio River in a boat, while not on business of the employer or covered in any manner under the contract of their employment, would appear to be comparable to the death occurring on the highway or bridge because both could be used by the general public to travel upon. This principle is clearly stated in the syllabus of the case of Buckland v. State Compensation Commissioner, 115 W.Va. 323, 175 S.E.2d 785, wherein it is stated: "An injury, resulting in death, received by an employee while traveling upon a public highway in the same manner and for like purposes as the general public travels such highway, and not in performance of his duties for his employer, is not an injury received in the course of employment within the meaning of the Workmen's Compensation Act and is, therefore, not compensable."
It is well settled in this state that a death or injury of an employee, in order to be compensable, must have been received both in the course of and as the result of his employment. Damron v. State Compensation Commissioner, 109 W.Va. 343, 155 S.E. 119; Emmel v. State Compensation Director, 150 W.Va. 277, 145 S.E. 29.
There is no question in the case at bar but that there was more than one route to be used by the deceased employees in going to and coming from work. The mere fact that one route across the river was shorter does not make an injury or death received by using this route compensable, whereas a death or injury received by using the longer route is not compensable. The evidence indicates the route across the river was more hazardous than the route over the highway. On the morning of the accident there was a heavy fog and in the winter ice formed in the river, according to the evidence. In such cases the employees should have used the safest route even though they were not required to do so. It would appear that the deaths of the claimants' husbands were caused in some manner by a collision with an object such as a tow boat. Although the object is speculative the fact of collision is not. This being true, even though it could be stretched in some manner to say the deceased men were in the course of their employment at the time of the fatal accident, there is no proof that it was in any manner the result of their employment. It is a general rule in compensation cases that the evidence is construed liberally in favor of the claimant. Fulk v. State *729 Compensation Commissioner, 112 W.Va. 555, 166 S.E. 5; Vento v. State Compensation Commissioner, 130 W.Va. 577, 44 S.E.2d 626. However, this principle does not relieve the claimants of the burden of establishing their claims, and the liberality rule cannot be considered as taking the place of proper and satisfactory proof. Hayes v. State Compensation Director, 149 W.Va. 220, 140 S.E.2d 443; Deverick v. State Compensation Director, 150 W.Va. 145, 144 S.E.2d 498; Emmel v. State Compensation Director, supra. The deaths would not be compensable under the facts in the case presented here. See Savannah River Lumber Co. v. Bush, 37 Ga.App. 539, 140 S.E. 899.
The fact that the employer had a plant on the Ohio side of the river where the deceased men lived would not alter the facts of this case in order to bring their deaths within the course of and make them a result of their employment, because they were not working at the plant on the Ohio side. They were going to work at the employer's plant where they were usually employed, on the West Virginia side of the Ohio River. They left from their homes in Toronto, Ohio, which were not owned by the employer, drove their automobiles to a parking place on the Ohio side of the Ohio River, parked them on premises not owned by the employer, used a boat owned by one of the men which had been secured to an object on premises not owned by the employer, and started across the Ohio River which was several hundred yards wide, to their place of employment. They were not engaged in any business for the company and there was nothing in the requirement of the contract of employment to use such methods of transportation or route to their employment. It is immaterial that they generally used this method of transportation and that such use was known by the employer. Under such circumstances the deaths of the employees could not be said to be within the zone of their employment. Buckland v. State Compensation Commissioner, supra; Miller v. State Compensation Commissioner et al., supra.
The case of Williams v. Compensation Commissioner, 124 W.Va. 238, 20 S.E.2d 116, is quite similar to the case at bar. In that case it was held that where a workman resides in a house not owned by his employer located two or three miles from his place of work and of his own accord elects not to make use of either of two highways from his residence but travels a route through a railway tunnel not owned by the employer and is injured at a place about one-third of a mile from the employer's premises such injury is not compensable, although the route traveled was substantially shorter and more convenient than the highway and had long been used by the claimant and his fellow-workmen without objection from the employer. In the Williams case, at page 242, 20 S.E.2d at page 117, this Court said: "The claimant at bar appears clearly to come within the very common class of employees who are injured off the employer's premises and while going to or coming from work by a route chosen by themselves. In such cases, in the absence of some special and controlling circumstance, compensation is uniformly disallowed."
For the reasons set out herein, the orders of the Workmen's Compensation Appeal Board are reversed and the consolidated case is remanded to the Compensation Commissioner for disposition in accordance with the reasoning contained herein.
Reversed; remanded with directions.