MARY LOU CLARK, *Widow, etc.*

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER, *and* UNION CARBIDE CORPORATION, *a corporation*

(No. 13166)

Submitted January 18, 1972.    Decided March 14, 1972.

*Benjamin D. Tissue,* for appellant.

*Kay, Casto & Chaney, George Sharp,* for appellee.

CAPLAN, JUDGE:

This is an appeal by the employer, Union Carbide Corporation, from an order of the Workmen's Compensation Appeal Board, dated September 29, 1971, which affirmed an order of the Workmen's Compensation Commissioner awarding benefits to the widow of a deceased employee of the aforesaid employer. The claimant is Mary Lou Clark, widow of the deceased employee, Frank E. Clark.

For approximately thirteen years prior to the date of his death on October 28, 1963, Frank E. Clark was employed as a pipefitter at the Institute plant of Union Carbide Corporation. In such employment his work consisted principally of the installation of new pipe and the repair of existing facilities. Essentially his work was confined to two areas of the plant, namely, the gas area and the fine chemical area. Mr. Clark was in no manner associated with the actual production of chemicals. According to the testimony of Mr. Richard Yelton, production manager of the area in which Mr. Clark worked, the

facilities and pipes upon which the latter worked were cleaned and purged of chemicals prior to the performance of any maintenance work.

It appears from the record that Mr. Clark was treated in the plant dispensary for exposure to chemicals on the following occasions: On July 11, 1954 for exposure to hydrogen cyanide; on December 23, 1954 for exposure to ethylene cyanophdrin; and on October 24, 1953 for exposure to ethylene oxide. Two of Mr. Clark's fellow employees testified that they did not recall that Mr. Clark had at any time been seriously exposed to chemicals. There is no showing in the record that such exposures resulted in any extended hospitalization or treatment.

On December 20, 1962 Mr. Clark reported to the medical department of the plant for treatment of a laceration to his right index finger. This injury occurred during his employment when a knife with which he was removing a gasket from a flange slipped and cut his finger. He was given emergency treatment and then sent to Thomas Memorial Hospital where the laceration was sutured. He was seen again at the plant dispensary on December 27, at which time Dr. Sexton, the medical director, reported that his right index finger was "edematous, tenderness, with hemogenic blebs with crepitus." Although this injury to his finger did not heal properly, Mr. Clark was released to return to work on February 11, 1963.

Dr. James H. Getzen, who became Mr. Clark's treating physician, testified that he first saw Mr. Clark on April 7, 1963. The reason for his visit was "a persistent sore in the finger, and because of his change in blood count with anemia and temperature elevation." Dr. Getzen diagnosed his illness as myeloblastic leukemia. The following questions and answers were adduced at the hearing:

"Q.—What is the cause of acute myeloblastic leukemia?

A.—This right now is in a state of flux. It is definitely unknown. It is an unknown caused disease.

Q.—The etiology of acute myeloblastic leukemia is unknown?

A.—Right.

Q.—This is generally accepted as the view of the medical profession at large?

A.—Right.

Q.—And you share that opinion and view?

A.—Right."

Dr. Getzen referred Mr. Clark to Dr. Charles A. Doan, internationally recognized authority on hemotology and Emeritus Director of Hemotology at Ohio State University. It was Dr. Doan's report upon which the commissioner and the board principally relied to grant the widow's claim.

The appeal board affirming the order of the commissioner awarding such benefits said, "sufficient medical evidence in this case to warrant the conclusions that the causes of the acute myeloblastic leukemia cannot with some degree of certainty be attributed to anything outside of the employment of claimant's husband and that it is just as likely that the employment environment caused the fatal disease as other outside factors. Under these circumstances, we believe that presumptions should be resolved in favor of the claimant rather than against her and the claim held to be compensable. *Vankirk* v. *Commissioner,* 144 W.Va. 447; *Pripich* v. *Commissioner,* 112 W.Va. 540; *Pannell* v. *Commissioner,* 126 W.Va. 725." It is from this order that the employer prosecutes this appeal.

The question presented for decision on this appeal is whether Frank E. Clark died from an occupational disease which occurred in the course of and as a result of his employment.

The right to workmen's compensation benefits is wholly statutory and any such benefits may be paid to a claimant only as authorized by law. *Bounds* v. *State Workmen's Compensation Commissioner,* 153 W.Va. 670, 172 S.E.2d

379; *Taylor* v. *State Workmen's Compensation Commissioner*, 152 W.Va. 609, 165 S.E.2d 613; *Bailes* v. *State Workmen's Compensation Commissioner*, 152 W.Va. 210, 161 S. E.2d 261. Pertinent to the decision of this case are the provisions of Code, 1931, 23-4-1, as amended, which read in part as follows:

> "For the purposes of this chapter, occupational disease means a disease incurred in the course of and resulting from employment. *No ordinary disease of life to which the general public is exposed outside of the employment shall be compensable except when it follows as an incident of occupational disease as defined in this chapter.* Except in the case of occupational pneumoconiosis, a disease shall be deemed to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances (1) that there is a direct causal connection between the conditions under which work is performed and the occupational disease, (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, (3) that it can be fairly traced to the employment as the proximate cause, (4) *that it does not come from a hazard to which workmen would have been equally exposed outside of the employment,* (5) that it is incidental to the character of the business and not independent of the relation of employer and employee, and (6) that it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction." (Italics supplied.)

This Court consistently has held that the burden of establishing a claim rests upon the person who asserts it. *Barnett* v. *State Workmen's Compensation Commissioner*, 153 W.Va. 796, 172 S.E.2d 698; *Eady* v. *State Compensation Commissioner*, 148 W.Va. 5, 132 S.E.2d 642; *Machala* v. *State Compensation Commissioner*, 109 W.Va. 413, 155 S. E. 169. Therefore, in the instant case, it is incumbent upon the claimant to establish by evidence that the deceased

employee died from an occupational disease which occurred in the course of and as a result of his employment.

As noted above, Dr. Getzen testified that the cause of acute myeloblastic leukemia is "definitely unknown". That this is the generally accepted view of the medical profession at large is undisputed in this proceeding. All of the doctors who testified on this matter, including Dr. Doan, are in agreement that the etiology of leukemia is unknown. That leukemia is an ordinary disease of life to which anyone at any age, regardless of environment or employment, may be subjected, is not denied by any witness in this proceeding, including Dr. Doan. Code, 1931, 23-4-1, as amended, provides that an ordinary disease of life is not compensable unless it is an incident of an occupational disease. It follows, therefore, that in order to hold that death resulting from leukemia is compensable, there must be proof that such illness occurred as an incident of an occupational disease as defined in the above quoted statute. Basically, the claimant must show by evidence that leukemia was caused by his employment.

The basis of the claimant's claim is that her husband, by reason of his employment as a pipefitter in a chemical plant, was exposed to chemicals which ultimately caused leukemia, resulting in his death. The evidence adduced in this proceeding does not show that Mr. Clark was continuously subjected to injurious exposure to chemicals while so employed. Although there is noted in the record four occasions on which he was treated for such exposure, these were isolated occurrences which took place some nine or ten years prior to his death. The testimony of the production manager and two fellow employees tends to disprove the theory that the deceased employee was subjected to exposure to chemicals in sufficient quantities to produce toxic influence. The pipe upon which Mr. Clark was called to work was purged of chemicals prior to the performance of such work. Most of this work was done outside rather than in an enclosed area. Protective equipment was supplied and precautions were taken to avoid

contact with chemicals. He was not engaged in any manner in the manufacture of chemicals. Other than the fact that Mr. Clark was employed in a chemical plant, there is no evidence that he was regularly subjected to exposure to chemicals. Thus, there is a failure to prove the premise upon which this claim is based, that is, that Mr. Clark was repeatedly and continuously exposed to chemicals during his employment.

Considering that leukemia was the cause of death in this case, we must look to the evidence to determine if there is proof that such disease was caused by his employment. As herein noted, by all who testified, leukemia is an ordinary disease of life. Reliance is placed almost solely upon the testimony of Dr. Doan to establish a connection between leukemia and Mr. Clark's employment so as to bring it within the statutory classification of an occupational disease.

As a result of his examination of Mr. Clark on October 2, 1963, Dr. Doan concluded: "We felt, in the light of the history of a number of years of occupation as a pipe setter or pipe fitter in the environment of the industry that he came from, that it was possible that there had been some damage there, because we have seen many other patients from similar occupations in which that was the case, and we thought we saw evidences of some toxicity, in other words, changes, that at least could be accounted for by some of the chemicals and agents to which he had been exposed." After agreeing that leukemia is an ordinary disease of life and that "anybody, as far as we know, could develop it out of the background of the unknown etiology," he testified as follows: "Q. Could you say, and are you willing to say, with a degree of medical certainty, that this man's condition was the result of exposure to toxic chemicals in the course of his employment and this is what caused his condition? A. I already said that it is difficult to determine the etiology of this kind of disturbance, and I think that no physician would be willing to take that and swear that that was the case. No, I would not say that. I would simply say that there were evidences * * *."

The whole tenor of Dr. Doan's answers in his lengthy deposition is that of study and experimentation. He agrees that he and his colleagues are searching for answers as to the etiology of leukemia but that it is still unknown. In this circumstance, we can conclude that such evidence, as to the cause of leukemia which resulted in Mr. Clark's death is wholly speculative. Even his speculation, that it was possible that Mr. Clark could have developed leukemia by reason of lengthy exposure to chemicals, is faulty. As herein noted there is no evidence that he was continuously exposed to chemicals over a period of years. The fact of thirteen years of employment around a chemical plant could only produce speculation of injurious exposure.

The proof offered in the instant case that leukemia, from which Frank Clark died, occurred in the course of and as a result of his employment, is wholly speculative and is inadequate to sustain the claim. The proof must be satisfactory that the injury, or in this case the disease, occurred in the course of and as a result of claimant's employment. *Staubs* v. *State Workmen's Compensation Commissioner*, 153 W.Va. 337, 168 S.E.2d 730; *Bilchak* v. *State Workmen's Compensation Commissioner*, 153 W.Va. 288, 168 S.E.2d 723; *Emmel* v. *State Compensation Director*, 150 W.Va. 277, 145 S.E.2d 29. This proof cannot be based wholly on speculation.

It is universally accepted in workmen's compensation law that evidence of a claimant will be liberally construed. *Bilchak* v. *State Workmen's Compensation Commissioner*, 153 W.Va. 288, 168 S.E.2d 723; *Vento* v. *State Compensation Commissioner*, 130 W.Va. 577, 44 S.E.2d 626. However, it is equally well accepted that such liberality rule cannot take the place of proper and satisfactory proof. *Bilchak* v. *State Workmen's Compensation Commissioner*, *supra; Emmel* v. *State Compensation Director*, 150 W.Va. 277, 145 S.E.2d 29; *Deverick* v. *State Compensation Director*, 150 W.Va. 145, 144 S.E.2d 498; *Hayes* v. *State Compensation Director*, 149 W.Va. 220, 140 S.E.2d 443. In

the instant case, by reason of the wholly speculative evidence, even the application of the liberality rule lends no assistance to the claimant. There is no satisfactory proof in this case which establishes a causal connection between the subject leukemia and the employment of the deceased employee. In this circumstance the claim must fail.

The Workmen's Compensation Appeal Board erroneously relied on the principles set out in *Vankirk* v. *State Compensation Commissioner,* 144 W.Va. 447, 108 S.E.2d 567; *Pripich* v. *State Compensation Commissioner,* 112 W. Va. 540, 166 S.E. 4, and *Pannell* v. *State Compensation Commissioner,* 126 W.Va. 725, 30 S.E.2d 129. These principles can best be demonstrated by setting out Point 1 of the Syllabus of the *Pripich* case, which reads as follows:

> "Where, in the course of and arising out of his employment, an employee in good health and of strong physique, suffers physical injury which is followed by serious disabilities, competent physicians differing as to whether the disabilities are attributable to the injury, but only probable or conjectural reasons or causes are assigned by physicians in an effort to explain the disabilities on grounds other than the injury, the presumptions should be resolved in favor of the employee rather than against him."

In those cases the Court reasoned that there was no reasonable explanation, other than the injury, for the death or disability of the employee and that the presumption that the injury caused the death or disability should be resolved in favor of such employee rather than against him. We are in full agreement with those decisions. They do not, however, apply to the case at bar. Here, the claimant died of an ordinary disease of life which was not, by satisfactory proof, connected to his employment. Here, unfortunately, there is a medical explanation for his death —leukemia.

An order of the Workmen's Compensation Appeal Board will be reversed by this Court on appeal where it is not supported by the evidence or where the legal conclusions of the board are erroneous. *Staubs* v. *State Workmen's*

*Compensation Commissioner,* 153 W.Va. 337, 168 S.E.2d 730; *Emmel* v. *State Compensation Director,* 150 W.Va. 277, 145 S.E.2d 29.

Inasmuch as the order of the appeal board in this case is without evidence to support it and its legal conclusions being erroneous, the order is reversed and this proceeding is remanded to the commissioner with directions that the claim be dismissed.

*Reversed and remanded with directions.*