NYLE FULTON SMITH

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER, *and*
UNION CARBIDE CORPORATION

(No. 13198)

Submitted April 18, 1972.          Decided June 21, 1972.

*Benjamin D. Tissue,* for appellant.

PER CURIAM

This case is before the Court on an appeal by the Union
Carbide Corporation from an order of the West Virginia
Workmen's Compensation Appeal Board entered on Jan-
uary 28, 1972, which affirmed a prior order of the State
Workmen's Compensation Commissioner by which he held

the claim of Nyle Fulton Smith to be compensable. It is undisputed that, during the course of his employment, the claimant sustained an injury to his eyes, primarily to his left eye. The sole question presented for decision upon this appeal is whether the injury was sustained as a result of his employment.

On March 24, 1970, the claimant was engaged in his employment as a laboratory assistant at the Technical Center of Union Carbide Corporation at South Charleston, West Virginia. While the claimant was engaged in performing his usual duties as an employee, a bottle containing a certain chemical fell to the floor and broke.

This occurrence took place about three or four feet behind the claimant. The claimant returned to the place where the broken bottle had come to rest under a table. He testified that he stooped down for the purpose of examining the label on the bottle in order to determine what chemical had been contained in the bottle and that, when he did so, he inhaled vapors or fumes which arose from the chemical and that immediately he became blinded in both eyes. He was wearing eye glasses at the time. It is not contended that any of the contents of the bottle actually came in contact with his eyes. He contends that the injury to his eyes resulted from his inhalation of the vapor or fumes from the chemical and from the contact of the vapor or fumes with the side of his face. It was later determined that the bottle had contained a chemical known as dicyclopentadiene.

The claimant was immediately taken by a fellow employee to the plant dispensary, and his eyes were "washed and stained" by a nurse. Dr. J. Bradford Block, a plant physician, testified that his examination made at that time disclosed no foreign substance in the claimant's eyes; that, with the passage of time, the claimant's vision began to return; that the examination disclosed no tissue damage to the eyes and no evidence of irritation, but that his examination did reveal that the claimant had a "visual field defect or a loss of vision in the left eye."

Dr. Block referred the claimant to the Shepherd Eye and Ear Clinic in Charleston where he was examined by Dr. J. A. B. Holt, an ophthamologist. The claimant was not hospitalized at that time but he was instructed by Dr. Holt to return on the following day. When the claimant returned on the following day to the Shepherd Eye and Ear Clinic, he was examined again by Dr. Holt and also by Dr. Shepherd. The claimant's injury was diagnosed as a blockage or collapse of the central retinal artery of the left eye. This diagnosis was followed by a telephone conversation between Dr. Holt and Dr. Block. The claimant was admitted to the Charleston General Hospital on the following day and was placed under the care of Dr. Dominic Gaziano, a specialist in internal medicine, who diagnosed the claimant's injury as a central retinal artery occlusion. While the several medical witnesses who testified at the hearing described the claimant's injury in slightly different language, it is undisputed that the injury results from an impairment of the flow of blood through the retinal artery and that this has caused an impairment of vision in the claimant's eye. Apparently the claimant's normal vision in his right eye has been restored.

Dr. Holt testified that the claimant's condition was the result of a vascular spasm which is often caused by an internal chemical or the absorbtion of an external chemical. He further testified that the claimant's condition can occur in individuals without regard to employment or to a work environment. In response to questions concerning whether the claimant's condition was occupational in origin, Dr. Holt gave the following testimony:

Q Are you prepared to say that in this situation that the condition this Claimant had was occupational or non-occupational?

A In my opinion, it was occupational.

Q Upon what basis do you draw that conclusion?

A The acuteness of the onset and it occurred at the time he was exposed to his fumes, according to his history, and it's the type of thing

that could come on acutely from the drug. He would certainly have noticed it beforehand if it had been on some systemic disease.

\* \* \*

Q Upon what then do you base your conclusion to rule out that this was of a non-occupational origin?

A Just the history and the findings.

Dr. Holt stated in his testimony that he knew very little about the properties of dicyclopentadiene.

Dr. Dominic Gaziano, the physician who treated the claimant during his hospitalization, testified that he had only a superficial knowledge of the properties of dicyclopentadiene and that he could not state with any degree of certainty that the inhalation of the fumes from the chemical caused the claimant's sight deficiency. In his testimony, Dr. Gaziano stated that conceivably there could be such an association, but he suggested that arteriosclerosis could have caused the claimant's condition.

Dr. R. J. Sexton, who has been employed as a plant physician at Union Carbide Corporation for twenty-two years, testified that the etiology of a retinal artery occlusion is an embolus, a thrombus, or a vasospasm; that these three conditions are nonoccupational in origin; and that based on his experience and a review of the available literature, there was no causal relationship between the claimant's exposure to dicyclopentadiene and his retinal artery occlusion.

Dr. Sexton further testified as follows:

Q Let me ask you in your experience in connection with the exposures and your treatment of individuals having exposures, do you have any instance where there has been an incident in which there has been damage to the retinal artery, such as claimed by the Claimant in this case?

A No.

Q  Would any of these men be exposed to the fumes of this material?

A.  Oh, yes, we've had inhalations.

Q  Would this also cover situations where there would be splashes or direct contact with the eye, both?

A  We've had people who have had direct splashes in their eyes, yes.

Q  Would there also be persons who would be exposed to the fumes of this material?

A  Inhalation exposure.

Q  Now, do you know of anything in the literature other than the Browning report which you have referred to that has suggested there is any relationship or causal relationship of the inhalation of dicyclopentadiene and the occlusion of the retinal artery?

A  If that's in the literature, I haven't found it.

In his testimony, Dr. J. Bradford Block, the plant physician who treated the claimant following his exposure to the chemical fumes, stated that he was of the opinion that the claimant's condition was one which had no causal connection with his exposure to the chemical fumes. His testimony was essentially identical in character to the testimony given by Dr. Sexton.

A fundamental principle of workmen's compensation law is that the evidence should be liberally construed in favor of the claimant. *Johnson v. State Workmen's Compensation Commissioner,* 155 W.Va. 624, 186 S.E.2d 771; *Ward v. State Workmen's Compensation Commissioner,* 154 W.Va. 454, 176 S.E.2d 592; *Fulk v. State Compensation Commissioner,* 112 W.Va. 555, syl., 166 S.E. 5. However, this Court has held that the liberality rule cannot take the place of proper and satisfactory proof. *Clark v. State Workmen's Compensation Commissioner,* 155 W.Va. 726, 187 S.E.2d 213; *Staubs v. State Workmen's Compensation Commissioner,* 153 W.Va. 337, 168 S.E.2d 730; *Bilchak v. State Workmen's Compensation Commissioner,* 153 W.Va.

288, 297, 168 S.E.2d 723, 729. This principle is succinctly stated in the third point of the syllabus of *Staubs v. State Workmen's Compensation Commissioner, supra,* as follows: "Though the general rule in workmen's compensation cases is that the evidence will be construed liberally in favor of the claimant, the rule does not relieve the claimant of the burden of proving his claim and such rule can not take the place of proper and satisfactory proof."

Dr. Block and Dr. Sexton testified that there was no causal relationship between the exposure to the fumes of the chemical dicyclopentadiene and the claimant's sight deficiency. Dr. Holt and Dr. Gaziano indicated that the claimant's eye condition may have been caused by the inhalation of the chemical fumes, but both of these doctors testified that they either knew very little or had only superficial knowledge about the chemical dicyclopentadiene. Dr. Gaziano testified that he could not state with any degree of certainty that the inhalation of the fumes caused the claimant's eye deficiency.

The proof offered by the claimant in the instant case that his sight deficiency occurred as a result of his employment is speculative, and where such proof is speculative it is unsatisfactory and inadequate to sustain a claim for workmen's compensation benefits. This principle of workmen's compensation law is clearly stated in the fourth point of the syllabus of *Clark v. State Workmen's Compensation Commissioner,* 155 W.Va. 726, 187 S.E.2d 213, in the following language: "Where proof offered by a claimant to establish his claim is based wholly on speculation, such proof is unsatisfactory and is inadequate to sustain the claim."

When an order of the Workmen's Compensation Appeal Board is based on evidence which is speculative and is inadequate to sustain a claim, such order is not supported by the evidence and for that reason is plainly wrong and will be reversed by this Court. This rule is stated in the fourth point of the syllabus of *Staubs v. State Workmen's Compensation Commissioner,* 153 W.Va. 337, 168 S.E.2d

730, as follows: "An order of the workmen's compensation appeal board which is not supported by the evidence and which for that reason is plainly wrong will be reversed by this Court on appeal."

For reasons stated in this opinion, the order of the West Virginia Workmen's Compensation Appeal Board is reversed.

*Reversed.*

Judge Harlan M. Calhoun participated in the decision of this case but his resignation was effective before this opinion was prepared, approved and announced.

Judge Frank C. Haymond participated in the decision of this case but his death occurred before this opinion was prepared, approved and announced.