ERNEST HUFF

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER, *and*
ISLAND CREEK COAL COMPANY

(No. 13418)

Submitted January 8, 1974.    Decided February 12, 1974.

*Amos C. Wilson* for appellant.

*Edward I. Eiland* for appellee Island Creek Coal Co.

*J. Thomas Lane, Jack L. Hickok* for appellee State
Workmen's Compensation Commissioner.

BERRY, JUSTICE:

Ernest Huff, hereinafter referred to as claimant, appeals from a final order of the Workmen's Compensation Appeal Board of July 30, 1973, which affirmed a ruling of the Commissioner on December 7, 1972, which held that the claimant's award of 50% permanent partial disability fully compensated him for his injuries sustained in a slate fall in the employer's coal mine. Claimant contends on this appeal that the Commissioner and the Appeal Board mistakenly determined that claimant's subsequent back disability was not the result of the 1960 mine accident and further contends he is entitled to a total disability award when his disabilities incurred in the 1960 accident are added to his previous disability as a result of an occupational disease under the second injury statute. This Court granted claimant's appeal on October 15, 1973 and the case was submitted for decision on January 8, 1974.

On January 7, 1960 the claimant sustained a fracture of the right leg and the left shoulder when he was injured in a slate fall in a coal mine operated by Island Creek Coal Company. The claim was held to be compensable by the Commissioner on February 24, 1960. Claimant received temporary disability benefits for 177 1/7 weeks because of various complications that developed in the treatment of his leg. Claimant had a bone graft operation performed on his leg on March of 1962 and subsequently walked with an abnormal gait. The claimant was referred to Dr. Howard A. Swart who stated that he felt the claimant was entitled to a 50% permanent partial disability award, allocating 45% for the right leg and 5% for the left shoulder. On July 1, 1963 an order was entered by the Commissioner granting the claimant a 50% award. Both the claimant and the employer protested this award. After several hearings were held, the Commissioner affirmed the award of 50% permanent partial disability on June 15, 1964.

On December 15, 1964 claimant petitioned to reopen his claim and on December 30, 1964 the claim was

reopened. The claimant contended that his condition had worsened and that he suffered from a back injury which had not been considered in the original award. He also contended that the disabilities incurred in the 1960 mine accident combined with a pre-existing disability as a result of occupational pneumoconiosis rendered him totally disabled within the meaning of the second injury statute.

After the claim was reopened, the claimant was again referred to Dr. Swart who reported that the claimant had a narrowing of the first lumbar vertebrae due to an old fracture of the spine apparently occurring at the time of his original injury and recommended an additional 10% award for the back injury. However, on April 26, 1965 the Commisisoner entered an order holding that the claimant had been fully compensated and that the back injury was due to causes other than his compensable injury. The claimant protested this ruling and numerous medical reports were introduced at the subsequent hearings. The consensus of these reports was that there was no progression or aggravation in the disability attributed to the right leg and left shoulder. However, it appears from the record that no x-rays were taken of the claimant's spine after the accident to determine if there had been any injury to his back. The claimant testified he did not realize his back was injured until after the cast was removed from his leg and he had started walking again. Dr. J. Hunter Smith who treated the claimant from the date of his injury until April 5, 1963 stated in his reports that the only complaints the claimant made of back difficulties during this period was on January 30, 1962 when the claimant was being treated as an out-patient. Other doctors who examined the claimant in 1963 and 1964 recorded no complaints about his back.

However, medical testimony revealed that a back problem could develop as a result of a fracture to the leg if a pelvic tilt developed. Moreover, the evidence revealed that prior to the 1960 injury, claimant had never

suffered from a back ailment and that he had not been involved in any accident that would have injured his back subsequent to the slate fall.

The principle reason for the appearance and participation by attorneys on behalf of the Commissioner was for the protection of the surplus fund which was involved in this claim under the second injury statute. See *Cline v. State Workmen's Compensation Commissioner,* 156 W.Va. 647, 196 S.E.2d 296.

Dr. C. W. Nelson, in a report dated May 12, 1969 was of the opinion that an x-ray of claimant's chest indicated he had moderate emphysema and pneumoconiosis, category II-III. Dr. D. L. Rasmussen, in a report dated May 13, 1969, concluded that: "This patient's minimal pulmonary abnormality would be estimated to reduce his overall functional capacity to perhaps on the order of 20% of his working capacity. This slight loss of capacity could be attributed primarily to his occupational exposure." According to Dr. Rasmussen's report, the claimant had worked in coal mines for approximately 15 years before the 1960 accident. The claimant had also been smoking about a half a pack of cigarettes a day for 22 years. The claimant stated that he first noticed a chronic cough about two years after the 1960 accident. As a result of Dr. Rasmussen's report, the Commissioner referred the claimant to Dr. James H. Walker who examined the claimant and stated in his report of December 27, 1971: "Bronchoscopy and bronchography was done on August 31, 1971 and revealed the presence of chronic bronchitis and no evidence of bronchiectasis. * * * In my opinion, Mr. Ernest Huff has 20-25% impairment of his capacity to work as the result of his chronic bronchitis. I have not made a diagnosis of an occupational pneumoconiosis." Apparently, the claimant has not worked in the mines since his accident in 1960.

The Commissioner and the employer contend that the claimant's pulmonary disability is not the result of an

occupational disease and that the claimant's evidence relating to this aspect of the case is speculative.

There are two questions to be answered for the disposition of the case at bar. (1) Is the claimant entitled to an additional award for the disability to his back attributed to the original compensable injury? (2) Is the claimant entitled to a total and permanent disability award by virtue of a previous injury under the second injury statute?

The original award of 50% permanent partial disability which was awarded to the claimant as the result of his compensable injury suffered by him on January 7, 1960 related only to the fracture of his right leg and left shoulder. However, after the case was reopened the claimant presented evidence of a back injury which he contended was caused by or was a result of the compensable injury. He first complained of a back injury to Dr. J. Hunter Smith in 1962 before the award of permanent partial disability was made, although he did not complain of such injury when examined by other doctors prior to the award. Dr. Swart, to whom the claimant was again referred for examination after the case was reopened, stated that the claimant had a narrowing of the first lumbar vertebrae due to an old fracture. The claimant told Dr. Swart that he hurt his back at the time he was injured and Dr. Swart attributed the back injury to the compensable injury and recommended that the claimant be paid an additional 10% partial disability as the result of the back injury. Dr. Frank R. Jamison, Dr. K. H. Lee and Dr. C. J. Lesaca were also of the opinion that the claimant had a disability to his back as the result of his original injury. Dr. Russell Kessel and Dr. George R. Callender were of the opinion that the back disability was not the result of the original injury. The attorneys representing the Commissioner admitted in their brief and argument that the failure of the Commissioner to allow an award for the disability to the claimant's back was clearly wrong.

It appears from the evidence in the instant case that the claimant's disability to his back was the result of the compensable injury, and that the Commissioner and the Appeal Board were clearly wrong in failing to allow an additional award for this disability. It has been held by this Court that where an award of compensation is made but the Commissioner or the Appeal Board did not properly take into consideration all of the evidence with regard to the claim, the order is plainly wrong and will be reversed by this Court. See *Posey v. State Workmen's Compensation Commissioner*, 157 W.Va. 285, 201 S.E.2d 102; *Kamensky v. State Compensation Commissioner*, 148 W.Va. 258, 134 S.E.2d 582.

The claimant's contention that he is entitled to a permanent total disability award under the second injury statute is not well taken. It was not until 1969 that this issue was raised in this case. The claimant was examined by Dr. D. L. Rasmussen who stated that in his opinion the claimant had a 20% pulmonary disability which could be attributed to his occupational exposure. Dr. Rasmussen admitted that his opinion that the pulmonary disability was attributed to the occupational exposure was speculative. Dr. C. W. Nelson stated that an x-ray taken in 1969 indicated that the claimant had moderate emphysema and pneumoconiosis. This is also speculative. Two other doctors testified that the claimant had a pulmonary disability although neither of them examined the claimant for this disability but relied solely on Dr. Rasmussen's report. The only diagnosis with regard to the claimant's pulmonary disability was made by Dr. James H. Walker whose diagnosis was that the claimant had chronic bronchitis but he specifically made no diagnosis of occupational pneumoconiosis. Chronic bronchitis is ordinarily not considered an occupational disease and is not compensable unless it is contracted in the course of and as a result of his employment. See *Ratcliff v. State Compensation Commissioner*, 146 W.Va. 920, 123 S.E.2d 829.

The evidence that the claimant's pulmonary disability was the result of his occupational exposure is wholly speculative, and such proof is inadequate to sustain an award of compensation. *Smith v. State Workmen's Compensation Commissioner*, 155 W.Va. 883, 189 S.E.2d 838; *Clark v. State Workmen's Compensation Commissioner*, 155 W.Va. 726, 187 S.E.2d 213. This principle is clearly stated in point 4 of the syllabus of the *Clark* case, in the following language: "Where proof offered by a claimant to establish his claim is based wholly on speculation, such proof is unsatisfactory and is inadequate to sustain the claim." The liberality rule does not take the place of proper proof. *Smith v. Workmen's Compensation Commissioner, supra.*

The second injury statute, Code, 23-3-1, as amended, provides in part that: "If an employee who has a definitely ascertainable physical impairment, caused by a previous injury, irrespective of its compensability, becomes permanently and totally disabled through the combined effect of such previous injury and a second injury received in the course of and as a result of his employment, the employer shall be chargeable only for the compensation payable for such second injury: * * * ." Such compensation when payable under the second injury statute is paid from a surplus fund known as the second injury reserve.

The pulmonary disability involved in the instant case cannot, in any event, be considered as definitely ascertained until after the compensable injury suffered by the claimant in 1960. Where a claimant contends that he is entitled to a permanent total disability award under the second injury statute involving an occupational disease he must prove that the disease was contracted in the course of and as a result of his employment before such occupational disease can be considered as a prior "injury". There is a lack of proper proof that the claimant's pulmonary disability in the case at bar was caused by his occupational exposure in the employer's mine and

therefore, it cannot be considered under the second injury statute. See *Bannister v. State Workmen's Compensation Commissioner,* 154 W.Va. 172, 174 S.E.2d 605.

For the reasons stated herein, the order of the Workmen's Compensation Appeal Board insofar as it pertains to the denial of an award for permanent total disability under the second injury statute is affirmed, but insofar as it affirmed the Compensation Commissioner's award of 50% permanent partial disability and did not award an additional 10% permanent partial disability for the back as the result of the compensable injury suffered by him on January 7, 1960, the order is reversed and the case is remanded to the Workmen's Compensation Appeal Board and the Workmen's Compensation Commissioner with directions to enter a total award of 60% permanent partial disability.

*Affirmed in part; reversed in part with directions.*